107    449
a204s 595

## Unity Company v. Equitable Trust Company et al.

1. Liens—*Foreclosure.*—A company in 1891 made an issue of $300,000 worth of bonds.    Afterward in 1895 another $400,000 issue was made.    The trust deed securing the issue of 1895 contained the following recital : "It is expressly understood and agreed that the property hereby conveyed is subject to the lien of a trust deed dated the first day of July, A. D. 1891," etc.    Three hundred thousand dollars of the 1895 issue were deposited with the trustee under an arrangement giving the holders of the 1891 bonds the right to surrender their first mortgage bonds and take second mortgage bonds.    *Held,* that the trust deed of 1891 was the superior lien.

2. Same—*Verbal Agreements Not to Foreclose Trust Deed According to its Terms with President of Trust Company of No Legal Effect.*—A

verbal agreement between the president of a company issuing bonds secured by a trust deed and the president of the trustee company under the deed, that such deed shall not be foreclosed according to its terms, is without legal effect.

3. SOLICITORS' FEES—*Properly Allowed for Services Rendered and to be Rendered.*—It is proper to allow solicitors' fees estimated upon the hypothesis that the decree in foreclosure will be entered in the ordinary course, taking into consideration only such services as will clearly be required before the termination of the suit.

4. FORECLOSURE—*Proceedings Have No Effect upon Interests of Persons Not Made Parties.*—The rights of one not a party to a foreclosure proceeding are not thereby foreclosed.

**Bill to Foreclose a Trust Deed.**—Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge presiding. Heard in the Branch Appellate Court at the March term, 1902: Affirmed. Opinion filed March 31, 1903.

**Statement.**—This is an appeal from a decree of foreclosure entered by the Circuit Court of Cook County.

The Unity Company, a corporation, was the owner of a leasehold of lots 4 and 5 in the assessor's division of original lots 3, 4 and 5, block 37, original town of Chicago. It had a lease of said land for ninety-nine years, ground rent being $18,000 per year, payable quarterly, and upon said premises it erected a sixteen-story office building known as the Unity Building. July 1, 1891, the Unity Company executed 300 bonds of $1,000 each, payable July 1, 1911, with interest at six per cent, payable quarterly, and to secure these bonds gave a trust deed to the Equitable Trust Company, as trustee. The complainants in the original bill, thirty-six in number, are holders of these first mortgage bonds, the principal of which amounts to $300,000.

January 1, 1895, appellant executed a second trust deed to the Equitable Trust Company securing an issue of 400 bonds of $1,000 each; 300 of these bonds were deposited with the trustee under a provision of the second mortgage, which was in the nature of a consolidated mortgage, giving the holders of the first mortgage bonds an option to exchange them for second mortgage bonds. By the terms of the first of the trust deeds mentioned, it was provided

that appellant should pay the ground rent of $10,000 per annum, and should also deposit with the trustees to constitute a sinking fund, on or before July 1st of each and every year, commencing July 1, 1896, the sum of $20,000 annually, to be applied in the redemption of the bonds. In the latter part of the year 1899, appellant was in default in a sum amounting, it is said, to $93,100, with interest. Steps were taken to foreclose in accordance with the provisions of the first trust deed which empowered the trustee to take immediate possession of the premises, in case of default, and to collect the rents, issues and profits. Demand was made upon appellant company to pay the amounts and such demand not being complied with, the principal sum was declared due in accordance with the provisions of the trust deed. In compliance with a formal written demand by the trustee upon appellant, the latter admitted its inability to make payments and finally turned over the building to the trustee by a written instrument signed by John P. Altgeld, its president.

The bill to foreclose was filed December 15, 1899, making parties defendant certain known holders of bonds and alleging that the names of the other owners of the second mortgage bonds were unknown to the complainants. This allegation was not traversed by appellant. It appears that the answer of appellant company was signed by John P. Altgeld, as president. It does not appear that any claim was set up by him that he was interested in any respect, personally, as a holder of any of said bonds. So far as appears, he never claimed to have been such owner in any individual capacity. Governor Altgeld's testimony was taken and he testified that he was acting for the Unity Company in all its negotiations and dealings with reference to these bonds.

HENRY C. NOYES, attorney for appellant.

AZEL F. HATCH, attorney for appellees.

MR. JUSTICE FREEMAN delivered the opinion of the court. It is sought to reverse the decree of foreclosure in this

case, first, upon the alleged ground that the trust deed and bonds of 1891 are not a superior lien to the bonds of 1895.

We do not deem it necessary to recite the evidence relating to the issue of the bonds and trust deeds referred to. It tends to show that the first mortgage bonds were all sold by appellant and that at the time the trust deed of July 1, 1895, was executed, the Equitable Trust Company, appellee herein, was not a holder of any of the first mortgage bonds.

It appears to be the contention of appellant's counsel that because $300,000 of the bonds issued in 1895 were deposited with a trustee under an arrangement giving the holders of the 1891 bonds the right to surrender them and take second mortgage bonds in their place, that therefore the second mortgage bonds became substitutes for the first. It does not appear, however, that any holders of the first mortgage bonds made such exchange. There is testimony introduced in behalf of appellant to the effect that the president of the Equitable Trust Company made an agreement to cancel the first mortgage bonds and to purchase 400,000 worth of bonds under the second trust deed, the purpose being to increase the bonded indebtedness not more than $100,000 over and above the amount of the first bond issue. The said president denies explicitly that he ever made any such representation or agreement. If he had done so, it does not appear that he could have purchased the bonds, had he so desired. They were not under his control. The alleged verbal agreement appears to have been without consideration and without binding force and authority upon either of the parties thereto. It is probable that if any conversation of that character occurred, it was general in its nature and it did not constitute an agreement such as could be reasonably insisted upon, or enforced. It is not shown that said president was authorized to make any such agreement on behalf of the first bondholders, and if any such authority was supposed to have existed the burden was upon appellant and not upon appellees to make such proof.

It is further urged that the trustee made no call for the

$20,000 which it was provided in the original trust deed should be deposited yearly, to provide a sinking fund to be applied in payment of the debt, but that it did make a call for $20,000 worth of bonds of the issue of 1895. We are unable to find anything in this which is material to any issue in the case. The trust deed of 1891 was the superior lien, for aught that we are able to discover in this record, and the debt thereby secured has not been paid nor any part thereof, so far as appears.

It is said that the foreclosure was commenced contrary to an agreement made, it is claimed, between the president of the Equitable Trust Company and Governor Altgeld that foreclosure proceeding should not be immediately commenced and that this meant within a reasonable time under all the circumstances of the case. Neither of these was a party to this suit. We are unable to discover anything in this record which could deprive the bondholders or the trustee of the right to enforce payment of the obligation secured by the trust deed in accordance with the terms of the written instrument.

It is insisted in the third place that the fee allowed to complainant's solicitor was improperly allowed. This objection is made upon the ground that the testimony upon which the allowance of the fee was based tends to show that the amount claimed was for services rendered and to be rendered, and it is urged that it was improper for counsel to state what the value of his services would be, when it was still uncertain what would be the nature and extent of the services thereafter required. It was not, however, a very difficult matter in a case of this character to foresee the nature and character of the work required to complete the foreclosure of this trust deed. The course pursued seems to have been that generally followed in making such proof in foreclosure proceedings as a part of the complainant's evidence in chief. The amount appears to have been estimated upon the hypothesis that the decree would be entered in the ordinary course, taking into consideration only such services as would clearly be required before the

termination of the suit. It is also argued that part of this fee was based upon an investigation by complainant's solicitors of the law of *ultra vires*, whereas, it is said, no such question was raised upon the pleadings. It does appear however, that objections were made by appellant's counsel on several occasions in the course of the introduction of complainant's testimony on the ground that the execution of the first mortgage was *ultra vires*. It is not shown that the fee allowed is unreasonable for the services rendered and no reason appears why we should interfere with the decree upon that account.

. It is further argued that John P. Altgeld was a necessary party to the suit, because it is said he, personally, had a large financial interest in its subject-matter. This contention seems to be based upon evidence tending to show that Governor Altgeld gave his individual note for $35,000, secured by certain of the second mortgage bonds. But it does not appear that he was the owner of these bonds and he testified that in all his dealings therewith, he acted entirely for the appellant company. He appears to have used them to secure his individual notes given for money raised for the use of the corporation; but so far as appears they were the property of the Unity Company. Governor Altgeld acted for the Unity Company as one of its counsel in this case, and also was a witness. He was familiar with the whole course of the proceeding. There is nothing in the evidence that tends to show that the complainant was aware that he held or claimed any interest. No one now appears representing him or his estate in this procedure, and we find nothing in the record which would enable us to say that he should have been made a party defendant. Were it otherwise the validity of the present decree would not necessarily be affected, and the rights of one not a party to the litigation are not thereby foreclosed. Walker v. Warner, 179 Ill. 16; Brown v. Miner, 128 Ill. 148; Rhodes v. Savings & Loan Co., 63 Ill. App. 77. So far as the evidence goes it tends to show that the bonds in question were not the personal property of Governor Altgeld, but

Continental Nat. Bank v. Metropolitan Nat. Bank.

belonged to the appellant.   They were held, at the time of the hearing, by the receiver for the National Bank of Illinois.   It can hardly be supposed that if he was the owner of the bonds, he would not have made the fact manifest in the course of the trial.

Our attention has not been called to any legal or equitable consideration which, so far as we can discover, would justify us in disturbing the decree of the Circuit Court. It will therefore be affirmed.